THE PEOPLE OF THE STATE OF NEW YORK,
RESPONDENTS, *v.* CORNELIUS M. HORTON AND ANOTHER,
APPELLANTS.

*Nuisance — obstruction of navigable waters — injunction to restrain — when granted.*

Any obstruction which renders the navigation of a port less convenient or safe
than it formerly was, is a nuisance.

If it be a hindrance to navigation, it is no defense that the public inconvenience
is counter-balanced by the benefit afforded by it.*

Whether or not any given encroachment upon a public or private right is a
nuisance, is a question of fact.

Where the mere presence in a ship canal of a floating elevator is not of itself an
obstruction to navigation, but it only becomes such when used in a particular
manner, a court of equity will not direct the removal of the elevator, but
simply forbid its use in such unlawful manner.

Where, in an action brought to restrain defendants from obstructing the ship canal
in the city of Buffalo, it appeared that the harbor masters of the port had full
power to locate and change the stations of the vessels therein, that they had
never directed the defendants to change the location of their elevator, and there
was no evidence that the harbor masters had ever neglected to perform their duty
in reference thereto : *held*, that as ample power had been vested in the harbor
masters to redress summarily any obstruction on the part of the defendants, a
court of equity would not interfere by injunction.

APPEAL from a judgment in favor of the plaintiff, entered upon
the trial of this action by the court, without a jury.

* See *Delaware and Hudson Canal Company* v. *Lawrence,* 2 Hun, 163.—[REP.

The action was brought by the people of the State to enjoin the defendants from obstructing the City Ship Canal, in the city of Buffalo, by a floating elevator.

The justice before whom the case was tried found, among other facts : " That the defendants are in the legal and rightful possession of a parcel of land lying on the north and river side of said canal and abutting thereon, with about 200 feet frontage thereon ; * * * that the defendants own in their own right and have possession of, manage, use, and control, a structure commonly called a floating elevator, and the same is used and kept by the said defendants in the waters of Buffalo harbor. That the same is about ninety-six feet long, twenty-four feet wide, and draws between two and three feet of water, and is capable at all times, during the season of navigation, of being moved to and from. all places in the said harbor ; that it possesses no motive power of its own, and when moved from place to place, the same is done by steam tugs, or otherwise ; that there are placed thereon and made part thereof, machinery and fixtures suitable for the purpose of transferring cargoes of grain in bulk from one floating vessel to another floating vessel, with safety, cheapness and dispatch. That during the season of navigation, for a year preceding the trial of this action, the said defendants have for the most of the time had and kept the said structure moored in the said canal at a point opposite the said premises so occupied by them, and when not in use made fast to the wharf on said premises.

" That the said structure is well adapted to the use of relieving vessels loaded with grain and aground in the harbor of Buffalo, and has capacity to receive on board a portion of a cargo, and to be used as a lighter, and is occasionally and as often as called upon used by defendants for such purpose in Buffalo harbor at all places where vessels are aground.

" That the business carried on by the said defendants in said canal by means of said structure in transferring cargoes of grain in bulk from one vessel to another vessel in the mode and manner aforesaid, when the vessel from which the cargo is transferred is not stranded, aground or disabled, is an unnecessary, unreasonable, and unlawful use of the said canal and harbor of Buffalo, and is an unnecessary, unreasonable and unlawful obstruction to the trade

and commerce carried on in the said canal and in the harbor of
Buffalo."

And he found, as a conclusion of law: " That the people of the
State are entitled to the order and judgment of this court, per-
petually enjoining and restraining the defendants from using the
said structure or floating elevator in the City Ship Canal, as a
means and in the business of loading and unloading vessels freighted
with grain in bulk, when the vessel, being loaded or unloaded, is
not aground or otherwise disabled, and is capable of being navi-
gated.    That the judgment herein is in no wise to prevent or
interfere with the use by the defendants of said structure or
elevator in lightering or unloading vessels or crafts in the said
City Ship Canal that are aground or otherwise disabled, nor from
using the same in business and for purposes not herein expressly
enjoined and forbidden."

*L. L. Lewis,* for the appellants.    This action ought not to be
sustained for the reason that an adequate remedy exists under the
charter and ordinances of the city of Buffalo to abate and prevent
all obstructions and nuisances in the city ship canal or harbor of
said city.    (1 Story Eq. Jur., § 641 ; *Mayne* v. *Griswold,* 3 Sandf.,
463 ; 9 N. Y. Leg. Obs., 25 ; *Crippen* v. *Hudson,* 13 N. Y., 161 ;
*Voorhees* v. *Howard,* 4 Keyes, 371 ; *Attorney-General ex rel.
Gloucester City* v. *Brown,* 24 N. J. Eq., 89 ; C. E. Green, 9 ; *Rowe*
v. *The Granite Bridge Co.,* 21 Pick., 347 ; *M. and E. R. R. Co.*
v. *Prudden,* 5 C. E. Green, 532 ; High on Injunctions, § 521 ;
3 Daniells' Ch. Pr., 1740.)    There is not a particle of proof in
the case that the public have suffered any annoyance or incon-
venience from the use of the defendants' floating machinery, but, on
the contrary, the proof is abundant that no cause of complaint has
existed.    Every encroachment is not a nuisance.    (*Peckham* v.
*Henderson,* 27 Barb., 207 ; *Griffith* v. *McCullum,* 46 id., 561 ;
*Howard* v. *Robbins,* 1 Lans., 63.)

*G. A. Scroggs,* for the respondents.    This was an unlawful
obstruction of a public highway and a public nuisance.    (*Hart* v.
*The Mayor, etc., of Albany,* 9 Wend., 571, 584 ; *Davis et al.* v.
*The Mayor, etc., of N. Y.,* 14 N. Y., 506.)    A systematic and con-

tinued encroachment on a highway, though for the purposes of carrying on a lawful business, is unjustifiable. (*The People* v. *Cunningham*, 1 Denio, 524, 530–533 ; *Hart* v. *The Mayor, etc., of Albany*, 9 Wend., 584 ; *The King* v. *Russell*, 6 East, 427 ; *Rex* v. *Jones*, 3 Camp., 230 ; *Davis* v. *The Mayor of N. Y.*, 14 N. Y., 524.) Where an individual, for his own private purposes, without title to the soil and without authority, encroaches upon and obstructs a navigable water-way and harbor, it is a public nuisance. (*Delaware and Hudson Canal Co.* v. *Lawrence*, 9 S. C. [2 Hun], 163, 180.)

GILBERT, J. :

Individuals have no right to make that several to themselves, which ought to be common to the public. For this reason an exclusive appropriation of any part of the ship canal in Buffalo for any purpose whatever, would be an illegal encroachment thereon. It might not be, technically speaking, a purpresture, for that would involve an encroachment on the bed of the ship canal. Such an act, too, might or might not amount to a public nuisance. Every encroachment is not a public nuisance. To make it such, damage to the public right of navigation or other public right, must be shown to exist. (Willard Eq. [Potter's ed.], 399, *et seq.* ; Kerr on Inj., 395.) Lord HALE, in the "De jure Maris," (11), says : " It is not every building below the high-water mark, nor every building below the low-water mark, that is *ipso facto* in law a nuisance, for that would destroy all the quays in England, and prevent the erection of new ones, for the king cannot license a common nuisance. It is not *ipso facto* a nuisance unless in fact it be a damage to the port or navigation, and whether it be a nuisance or not, is *questio facti*, and to be determined by a jury upon evidence, and not *questio juris*." The distinction between the two classes of wrongs is thus pointed out, in *Attorney-General* v. *Richards* (2 Anst., 606) : " Where the *jus publicum* is violated, it is a nuisance, and it frequently happens that a nuisance in a port is accompanied with a purpresture, or encroachment on the soil of the crown." And Chancellor KENT gives the same definition (*Atty.-Gen.* v. *Utica Ins. Co.*, 2 Johns. Ch., 381.) It is not important in this case however, to deal with definitions, for if the acts of the

defendants, in the use of their elevator, obstructed navigation in the ship canal, they amounted to a nuisance; and in determining the question of obstruction, it is sufficient if it appears that the navigation has been rendered less convenient or less safe than formerly. The public have the right to the free use of the harbor, subject to such regulations as have been established by law, and the right to regulate and control the use of the harbor belongs to the sovereign power. It is the infringement of one or both of these rights that constitutes a nuisance in a harbor. (*Hart* v. *The Mayor*, 9 Wend., 571.) The true question in a case of nuisance in a port is, whether or not a damage occurs to the navigation in the particular locality. If the thing complained of be a hindrance to the navigation, it is no defense, that the public inconvenience is counter-balanced by the benefit to be afforded by it. (*Rex* v. *Ward*, 4 A. & E., 386; *Reg.* v. *Betts*, 16 Q. B., 1023.) But all the authorities concur in holding, that whether any given encroachment upon a public or private right is a nuisance or not, is a question of fact.

In the case before us the proofs do not show, nor is the fact found, that the elevator of the defendants is, *of itself*, a nuisance, nor that the use thereof has produced any material obstruction to the free and common use of the ship canal by other vessels. Nor does it appear that any objection to the manner in which the defendants used their elevator, was ever made by those to whom the regulation of the use of the ship canal has been intrusted by law, or that any complaint was ever made by others who used the ship canal, that the defendants' use of the elevator impeded navigation therein.

The material facts found are, that the elevator is adapted for use at all places in the harbor of Buffalo for the purpose of unloading vessels that are aground, but that its use has been mostly confined to a particular locality in the ship canal, where the defendants have carried on the business of transferring cargoes of grain from propellers and other water craft to canal boats, and that such latter use is an unnecessary, unreasonable, and unlawful use of the said ship canal and harbor of Buffalo, and is an unnecessary, unreasonable, and unlawful obstruction to the trade and commerce carried on in said ship canal and in the harbor of Buffalo. Hence it is found as a conclusion of law, that the people are entitled to a perpetual injunction restraining the defendants, not merely from using their

elevator in the illegal manner stated, but from using it in the ship canal, as a means, and in the business of loading and unloading vessels freighted with grain in bulk, when, and in instances where, the vessel being loaded or unloaded is not aground or otherwise disabled, and is capable of being navigated, and judgment was rendered accordingly.

These facts clearly do not show that the mere presence in the ship canal of the floating elevator in question, is an unlawful encroachment thereon. On the contrary, the judgment under review concedes the right to use it for the purpose of unloading vessels that are aground or otherwise disabled. If it can be used for that purpose, it is difficult to perceive why it may not be used for any other purpose to which it is adapted. It takes up no more space, and produces no other or different effect upon the rights of others who are entitled to participate in the use of the ship canal, whether the vessel to be loaded or unloaded is afloat and seaworthy, or aground and disabled. There is no principle of law that we are aware of, that will justify the discrimination which has been sanctioned, we think inadvertently, by the court below. If the plaintiffs are entitled to any remedy, it should have been limited to a redress of the wrong which the court found the defendants had committed, namely, the use of the elevator in the manner which the court adjudged was unlawful and unreasonable.

With respect to the continued use of the elevator, at a particular locality in the ship canal, it does not appear that it was done under any claim of a right to appropriate a part of the ship canal, exclusively, or with intent to commit a trespass. Putting the most unfavorable construction upon the conduct of the defendants, it amounts to no more than an unwarranted invasion of a public right, unattended, however, by any material injury, either public or private. An ample remedy for all such grievances has been provided by the police powers on this subject, vested in the common council of the city of Buffalo. That body has power to enact ordinances, empowering the harbor masters to prescribe and regulate the location of all vessels, boats or floats, and to compel them to change their location. It has exercised the power by enacting ordinances which authorize and direct the harbor masters to give such orders and directions as they deem just and proper relative to

the location and change of station of every steamboat, or other craft or vessel or float in the harbor of Buffalo, and which imposes a penalty of twenty-five dollars for every neglect or refusal to comply with such orders or directions. It does not appear that the harbor masters ever directed the defendants to change the location of their elevator, and the court below has found as a fact, that there is no evidence that the harbor masters have at any time refused or neglected to perform their duty in reference to any alleged obstruction on the part of the defendants in said ship canal. Inasmuch, therefore, as the public authorities appear to have acquiesced in the wrong committed by the defendants, and such wrong consists merely of the manner in which they have used their elevator, which the court below has found to be unnecessary, and the wrong can be effectually remedied by a change of such use, whenever directed by the harbor masters, an exercise of the equitable jurisdiction of the court would seem to be unnecessary, except for the purpose of establishing rights which nobody disputes, or of redressing a technical grievance which has produced no substantial or material injury. The jurisdiction of courts of equity in cases of purpresture, as well as of public nuisances generally, rests in the necessity of preventing irreparable mischief, or of avoiding vexatious litigation. Although its jurisdiction in such cases is well established, yet it will not be exercised where the object can be as well attained in the ordinary tribunals, or by other means specially provided by law for that purpose. (*Atty.-Gen. ex rel. Gloucester* v. *Brown*, 24 N. J. Eq., 89; *Coulson* v. *White*, 3 Atk., 21; 2 Eden on Inj., 272.) Ample power has been vested in the harbor masters to redress, summarily, the wrong complained of in this case, and we think enough has not been shown to justify the extraordinary interposition of a court of equity, and more especially to warrant a judgment which in effect prohibits, as being illegal, any use of floating elevators in the harbor of Buffalo, except for the purpose of relieving vessels in distress.

The judgment must be reversed and a new trial granted, with costs to abide the event.

Ordered accordingly.